| | |
|---|---|
| Jeanette Cherry, | No. CV 08-478-TUC-DCB (JCG) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

The Plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the Court is an opening brief filed by Plaintiff on February 12, 2009 (Doc. No. 17), a response brief filed by Defendant on May 14, 2009 (Doc. No. 24), and a reply filed by Plaintiff on June 2, 2009 (Doc. No. 27).

The Magistrate Judge recommends that the District Court, after its independent review, deny the relief requested by Plaintiff. The final decision of the Commissioner was supported by substantial evidence.

# PROCEDURAL HISTORY

On September 15, 2003, Plaintiff filed applications for disability benefits and supplemental security income (SSI) benefits. (AR. 21.)[1] In both applications, Plaintiff alleged a disability that began on October 7, 2001. (*Id*.) The claims were initially denied on March 3, 2004. (*Id*.) Plaintiff requested a hearing on May 4, 2004. (*Id*.) Plaintiff appeared and testified at a hearing before Social Security Administration Administrative Law Judge (ALJ) Norman R. Buls on July 11, 2006. (*Id*.) On October 24, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (AR. 18-28.) Plaintiff appealed the ALJ's decision, and the Appeals Council denied the request for review on June 27, 2008. (AR. 5.) Plaintiff then filed the instant complaint in U.S. District Court, appealing the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

# CLAIMANT'S WORK HISTORY AND MEDICAL HISTORY

Plaintiff was born on June 17, 1968; she is currently 41 years old. (AR. 639.) She has a GED. (*Id.*) She is divorced and, at the time of the administrative hearing in this case, lived with her then 18-year old son and then 12-year old daughter. (*Id.*)

Plaintiff worked full-time as a nurse's aide until she sustained an employment-related injury to her back in October, 2001. (AR. 593.) She has not worked full time since October, 2001. Plaintiff worked a part-time job at Safeway from May 3, 2005 until December 7, 2005, when she was placed on medical leave due to her ongoing back problems. (AR. 642.)

Medical records indicate that on October 31, 2001, Plaintiff was treated at University Hospital for a back injury sustained on October 15, 2001.[2] (AR. 232.) The doctor noted mild

---

[1] Citations to the administrative record are abbreviated herein as "AR." Some of the pages of the administrative record have been numbered on both the top right and the bottom right corners. The Court refers to the administrative record by the number appearing in the top right corner of the page.

[2] There is an unexplained discrepancy in Plaintiff's medical records: one set of medical records is dated October 31, 2000 and states that Plaintiff injured her back at work on October 15, 2000. (AR. 232.) Other medical records, however, are from 2001 and contain reports of an on-the-job back injury in October, 2001. (AR. 547, 553, 593.) Plaintiff's opening brief alleges that her back injury occurred in October, 2001 and the ALJ determined that the "record documents a work-related back injury in October 2001." (AR. 24.)

tenderness in Plaintiff's low back and upon leg raising. The doctor diagnosed Plaintiff with muscle sprain or spasm, prescribed pain medication and instructed Plaintiff to avoid lifting, pulling, pushing and bending for 1 week. (*Id.*)

On October 17, 2001, Dr. Pradip Sedani treated Plaintiff for low back pain that radiated into both legs. Dr. Sedani noted limitations in motion, paravertebral muscle spasm, flattening of the lumbar curve and pain on coughing/sneezing. He diagnosed Plaintiff with a lumbrosacral sprain/strain and lumbrosacral radiculitis. He prescribed massage therapy and referred Plaintiff for an MRI, chiropractic care and acupuncture. (AR. 547-48.)

On October 19, 2001, Dr. Neil Tropiano treated Plaintiff and diagnosed her with a cervical sprain/strain, cervicothoracic segmental dysfunction, cervical radiculitis/radiculopathy, muscle spasm, lumbar sprain/strain, L/S segmental dysfunction, lumbar radiculitis, muscle spasm, shoulder sprain/strain and internal derangement of the knee. (AR. 594.) He recommended treatment including chiropractic manipulative therapy, massage therapy, physical therapy, modification of activities of daily living and therapeutic exercises.

On November 20, 2001, Dr. Weiner performed an EMG study on Plaintiff and diagnosed Plaintiff with right L4-L5 and L5-S1 radiculopathy. (AR. 320.)

Dr. Sedani treated Plaintiff again on November 28, 2001 and found no change in her condition. (AR. 549.) He recommended that Plaintiff continue a physical therapy program and referred Plaintiff for chiropractic treatment.

On December 10, 2001, an MRI examination of Plaintiff's spine was performed by Dr. Robert Scott Schepp. (AR. 555-56.) The MRI showed bulging disks at L4-L5 and L5-S1. Dr. Schepp noted that the L5 vertebrae body was transitional.

On January 9, 2002, Dr. Sedani treated Plaintiff and found no change in her condition. (AR. 550.) He recommended continued physical therapy, chiropractic care and acupuncture.

On January 10, 2002, Plaintiff was treated at University Hospital for diverticulitis and chronic lower back pain. (AR. 240.)

In January, 2002, Dr. Tropiano conducted a neuromuscular test on behalf of the New York State Worker's Compensation Board. (AR. 537.) The test revealed abnormal muscle involvement in muscles supplied by the L1, L3, L5 and S3 nerves. (AR. 544.)

On January 14, 2002, Dr. Nangia of Total Neurocare, PC examined Plaintiff and noted tenderness in Plaintiff's cervical and lumbar spine. He diagnosed Plaintiff with post-traumatic headache, cervicalgia, cervical muscle post-traumatic sprain syndrome, cervical radiculopathy, lumbalgia, lumbosacral muscle post-traumatic sprain syndrome, lumbo-sacral radiculopathy and traumatic bulging of the lumbar intervertebral disc between L4-L5 and L5-S1. He recommended that Plaintiff continue physical therapy and treatment 3-4 times per week for four to six weeks, continue with pain medication, refrain from strenuous physical activities and consult with a chiropractor and acupuncturist. Dr. Nangia opined that Plaintiff was partially, temporarily disabled as a result of her injury. (AR. 588-89.)

On January 14, 2002, Dr. Richard Yaldizian performed a diagnostic musculoskeletal ultrasound study of Plaintiff's injuries. He observed inflammation between the C4-C5, C6-C7 and L4-L5 vertebrae and recommended follow-up diagnostic testing. (AR. 573.)

On January 30, 2002, Dr. Stephen Kulick evaluated Plaintiff and reviewed her MRI and EMG results. He diagnosed Plaintiff with lumbar radiculopathy. (AR. 553-54.)

On January 30, 2002, Dr. Tropiano conducted neurometer nerve testing; the testing suggested abnormal nerve involvement and Dr. Tropiano recommended electro-diagnostic nerve studies. (AR. 558.)

On January 31, 2002 and February 4, 2002, Plaintiff was treated at University Hospital for chronic low back pain. (AR. 242, 394.)

On February 26, 2002, Dr. Nicole Gullo conducted an independent medical examination of Plaintiff. During the examination, Plaintiff reported that she could perform self-care tasks such as taking out the trash, doing laundry and making the bed without much difficulty despite some pain. (AR. 579.) Plaintiff reported some pain and difficulty with physical activity such as standing, sitting, walking and bending. (*Id*.) Plaintiff also reported that she could engage in functional activities such as carrying, climbing stairs and lifting despite some pain. (*Id*.)

Plaintiff described her symptoms as "annoying." (*Id*.) Dr. Gullo noted that Plaintiff's symptoms had not been documented medically to cause an appreciable diminution in Plaintiff's ability to carry out daily activities. (*Id*.)

On March 23, 2002, Dr. Nangia performed a follow-up neurological consultation and concluded that Plaintiff showed moderate improvement. Dr. Nangia noted tenderness along Plaintiff's cervical and lumbar spine. (AR. 527.) Dr. Nangia opined that Plaintiff was partially, temporarily disabled as a result of her spinal injuries. (AR. 530.)

On April 8, 2002, Plaintiff was treated at University Hospital for diabetes and blurred vision. (AR. 245.)

On May 20, 2002, Dr. Lavonna Branker examined Plaintiff on behalf of the Social Security Administration. (AR. 194.) Dr. Branker diagnosed Plaintiff with lower back pain with disk disease, decreased range of motion, diabetes, stable migraine headaches, morbid obesity and borderline anemia. (AR. 195-96.) She opined that Plaintiff was able to walk, sit, stand, lift, carry, handle objects, hear, speak and travel. She further opined that Plaintiff was able to perform sedentary activities with limitations on bending. (AR. 196.)

On November 25, 2002, Plaintiff was treated at University Hospital for diabetes-related symptoms. (AR. 248.) The treating physician noted Plaintiff's chronic back pain.

On December 3, 2002, Plaintiff was referred to Dr. Mario Introna for functional evaluation testing. (AR. 559.) The testing evaluated Plaintiff's range of motion, muscle strength and physical capacity. Test results reported Plaintiff at a "40% whole person impairment level."

On July 31, 2003 Plaintiff was treated at University Hospital for a foot and ankle sprain. (AR. 229.) The medical records from that date do not mention Plaintiff's back pain.

On November 26, 2003, Plaintiff was treated at University Hospital for back pain with spasm. (AR. 346.) X-ray results were normal.

On January 2, 2004, Dr. Lamberto Flores evaluated Plaintiff on behalf of the New York State Department of Disability Assistance. (AR. 512-16.) Dr. Flores noted tenderness at L4-S1 of Plaintiff's spine and limited range of motion of the spine. Dr. Flores also noted that Plaintiff

was limited in her ability to bend, stand up from a supine position, toe walk, heel walk and tandem walk. He opined that Plaintiff was limited in her ability to perform a job involving prolonged walking/sitting/standing, climbing stairs or heavy lifting. He recommended an orthopedic evaluation, weight reduction and private medical follow-up. (AR. 516.)

On February 24, 2004, Dr. Stewart – a non-examining physician – reviewed Plaintiff's medical records on behalf of the Social Security Administration. (AR. 506-11.) Dr. Stewart opined that Plaintiff had residual functional capacity ("RFC") to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday and had no limitations in pushing or pulling. Plaintiff's medical records also include an RFC from Dr. Fabrizno, also a non-examining physician, who offered the same opinion regarding Plaintiff's ability to lift, stand and sit in an average work day. (AR. 482-487.)

Plaintiff moved to Tucson, Arizona in May, 2005. (AR. 642.) She worked part-time as a cashier at Safeway from May, 2005 to December, 2005. (AR. 641-42.)

On July 11, 2006, Plaintiff testified that she is unable to work due to significant back pain and spasm. (AR. 646.) She also testified that the medication she takes for her back pain makes her sleepy and nauseated. (*Id.*) According to Plaintiff, her children assist her with grocery shopping, laundry and household tasks. (AR. 647-48.) Plaintiff testified that she spends her days reading and laying down; she might watch one movie in a day and/or work at the computer for one hour. (AR. 648-49.)[3]

---

[3] Plaintiff argued in her Opening Brief that "evidence provided to the Appeals Council is missing, including the 16 pages of emergency room records from Northwest Medical Center from March of 2007, and the RFC provided by Dr. P. Leroy Goedecke in June, 2007. I ask that Defendant certify the record. I enclose copies of the missing records." (Doc. No. 17, pg. 1.) However, the "missing" records provided by Plaintiff were submitted to the Appeals Council as part of Plaintiff's request for review, and the Appeals Council declined to consider them. (AR. 6.) Pursuant to 20 C.F.R. §§ 404.953(a) and 416.1453(a), the Appeals Council will consider the evidence in the ALJ hearing record and "any new and material evidence only if it relates to the period on or before the date of the [ALJ] hearing decision." Accordingly, the evidence submitted by Plaintiff has not been considered by this Court. *See* 42 U.S.C. § 405(g) (district court's review is limited to the administrative record). In addition, for the reasons stated in section 4, below, the new evidence is not grounds for remand.

**CLAIM EVALUATION**

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991). The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the claimant is not disabled and benefits are denied. *Id.* If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a determination of whether the claimant has a medically severe "impairment or combination of impairments." 20 C.F.R. §§ 404.1520(c), 416.920(c).

In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment more than minimally limits or restricts his or her "physical or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993) (citations omitted). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient RFC[4] to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial

---

[4] Residual functional capacity is defined as that which an individual can still do despite her limitations. 20 C.F.R. § 404.1545.

gainful work in the national economy in view of claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g).

## THE ALJ'S FINDINGS

The ALJ analyzed Plaintiff's claim of disability according to the five-step procedure. At step one of the analysis, the ALJ found that Plaintiff was not engaged in substantial gainful activity.  (AR. 23.)  At step two of the analysis, the ALJ concluded that Plaintiff suffered from the following severe impairments: degenerative disk disease of the lumbar spine, obesity, and diabetes mellitus.  (*Id*.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal one of the impairments listed in the Social Security regulations.  (AR. 24.)  At step four, the ALJ concluded that Plaintiff had RFC to perform work at the light exertional level.[5]  (*Id*.)  The ALJ found that Plaintiff could sit, stand and/or walk for about six hours in an 8-hour day with normal breaks.  In addition, the ALJ found that Plaintiff would be able to lift and carry 20 pounds occasionally and 10 pounds frequently.  The ALJ found no other exertional limitations.  (*Id*.)  The ALJ found Plaintiff's statements concerning the intensity, duration and limiting effect or her symptoms to be not entirely credible.  The ALJ also gave little weight to the opinions of Drs. Branker and Flores.  (AR. 26-27.)  Because the ALJ concluded that Plaintiff had sufficient RFC, Plaintiff's claim was denied at step four of the review.  The ALJ went on to conclude, however, that Plaintiff was unable to perform any past relevant work but could perform jobs that exist in significant number in the national economy.  (AR. 27.)

## STANDARD OF REVIEW

An individual is entitled to SSI disability benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A).  "A claimant will be found disabled only if the impairment is so severe that, considering age, education, and work

---

[5] "Light work" entails the ability to lift and carry up to ten pounds frequently and twenty pounds occasionally. 20 C.F.R. § 404.1567(b). It also requires "a good deal of walking or standing." *Id*.

experience, that person cannot engage in any other kind of substantial gainful work which exists in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (quoting *Marcia v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

To establish a *prima facie* case of disability, the claimant must demonstrate an inability to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984) (citing *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984)). Once the claimant meets that burden, the Commissioner must come forward with substantial evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th Cir. 1985).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citation omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (citations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1987). The standard is "less than a preponderance" of the evidence standard. *See Matney,* 981 F.2d at 1019.

"[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019. When applying the substantial evidence standard, however, the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Id.* A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician[6] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993) (citations omitted). The Commissioner may reject a treating physician's uncontradicted opinion only if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991)); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)). No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Soc. Sec. Admin.,* 119 F.3d 789, 792-93 (9th Cir. 1997).

---

[6] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

## DISCUSSION

Plaintiff challenges the denial of her application on four grounds:[7] (1) the ALJ erred in concluding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) the ALJ improperly rejected Plaintiff's testimony without providing specific, clear and convincing reasons for doing so;[8] (3) the ALJ improperly rejected the opinions of treating physicians without providing legitimate and specific reasons for doing so; and (4) remand to the ALJ is required in light of medical records obtained in 2007. Plaintiff argues that the decision of the ALJ should be reversed or, in the alternative, remanded for further findings.

**1.    The ALJ did not err in concluding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.**

Plaintiff presents several arguments related to her obesity. (Doc. No. 17, pgs. 19-21.) Defendant did not respond to any of these arguments in its response brief. Nonetheless, the Court concludes that the arguments are without merit.

First, Plaintiff alleges that the ALJ did not consider Plaintiff's obesity singly and in combination with other impairments. However, the record indicates that at step two of the analysis, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, obesity and diabetes were severe impairments within the meaning of 20 C.F.R. 404.1520(c) and 416.920(c). (AR. 23.)

--------

[7] LRCiv 16.1 requires that Plaintiff's opening brief include "a statement of the issues presented for review in separate numbered paragraphs" and "an argument ... divided into sections separately treating each issue." Plaintiff's opening brief fails to comply with LRCiv 16.1. On page 2 of the opening brief, Plaintiff identifies six "Issues" for the Court (two of which address whether the Court should reverse the ALJ's decision or remand the case, considerations which should receive separate treatment pursuant to LRCiv 16.1). In the "Argument" section of the opening brief, Plaintiff presents fourteen issues; only two of the issues are numbered and most are not mentioned in the "Issues" section of the brief. The Magistrate has dealt with this discrepancy by organizing the arguments raised by Plaintiff into the four main issues identified in the Report & Recommendation.

[8] Although Plaintiff characterizes this issue as a claim that the ALJ "inaccurately characterized the record," the arguments made by Plaintiff relate to the reasons provided by the ALJ in support of his decision to reject the testimony of Plaintiff as not entirely credible.

Second, Plaintiff alleges that the ALJ failed to consider whether Plaintiff's impairments or combination of impairments met or equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  However, review of the record indicates that the ALJ considered "claimant's attorney['s claim that] her impairments meet the criteria of Medical Listing 1.05A," but concluded that "a careful review of the medical records, the hearing testimony and other evidence demonstrates that her impairments are not so severe that they meet or equal any of the listed impairments." (AR. 24.)

Finally – and somewhat at odds with Plaintiff's second obesity-related argument – Plaintiff contends that the ALJ should have considered Plaintiff's obesity as medically equivalent to a listed impairment.  The Court does not have sufficient information from the Plaintiff to consider this argument.  The Listing of Impairments describes specific impairments of each of the major body systems "consider[ed] to be severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a).  To meet a listed impairment, the claimant must establish that she has each characteristic of the listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. *See* 20 C.F.R. §§ 404.1526(a), 416.926(a). Plaintiff has not identified which Medical Listing she believes she has met.  It is also unclear which Medical Listing Plaintiff claimed to have met during her administrative hearing.

The transcript from the hearing indicates that Plaintiff's counsel argued to the ALJ that "according to SSI 3.00 I'd like you to look closer at the possibility of step three evaluation." (AR. 653.)  Assuming Plaintiff was referring to the Listing of Impairments, "3.00" is the general heading for Respiratory System impairments.  The ALJ's opinion states that "claimant's attorney asserts that her impairments meet the criteria of Medical Listing 1.05A," (AR. 24) which is the Medical Listing for Inability to Ambulate Effectively due to the amputation of both hands.  In a brief provided to the ALJ on July 24, 2006, Plaintiff's counsel argued that Plaintiff's obesity was of such a level that it resulted in an inability to ambulate effectively as defined in sections 1.00B2b or 101.00B2b of the Medical Listings.  1.00B2b and 101.00B2b

are the provisions within the Medical Listing which define loss of function of the musculoskeletal system. Pursuant to 1.00B2b and 101.00B2b, a person is unable to ambulate effectively if he/she cannot achieve "independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," such as a walker or two canes. There is no evidence before the Court suggesting that Plaintiff falls within this definition. In sum, the Court is at a loss, based on the information provided by Plaintiff, to consider the merits of this argument.

**2.    The ALJ provided clear, convincing reasons for rejecting Plaintiff's testimony.**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an [underlying] impairment or impairments" and "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citations omitted). "The claimant need not produce objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.* "Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Id.* "Finally, the claimant need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused *some* degree of symptom." *Id.* (emphasis added). This approach to the evaluation of a claimant's testimony "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms." *Id.*

Once a claimant produces medical evidence of an underlying impairment that is reasonably likely to be the cause of some pain, the ALJ "may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). Although an ALJ "cannot be required to believe every allegation of disabling pain," *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), the ALJ cannot reject testimony of pain without making findings sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Bunnell*, 947 F.2d

at 345-46 (citing *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). There are a number of factors the ALJ must consider to determine the credibility of the claimant's allegations of disabling pain. These factors are: (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. *Id.* at 346 (citing SSR 88-13). If "there is no affirmative evidence suggesting [the claimant] is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1283-84. The ALJ may also consider: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Id.* at 1284.

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible. (AR. 24.) Plaintiff challenges this finding by the ALJ on several grounds.[9]

First, Plaintiff alleges that the ALJ improperly favored x-ray results over MRI and EMG results. This argument misconstrues the ALJ's findings. In summarizing Plaintiff's medical

---

[9] Plaintiff's brief also includes several broad and unsupported allegations such as "the ALJ improperly selected records from amongst the voluminous records, excluded the bulk of the medical documentation ... misconstrued the evidence ... failed to take any conflicting evidence into consideration [and] discounted a large volume of records produced by the Plaintiff's treating physicians." (Doc. No. 17, pgs. 7-9.) Because – with the exception of the arguments discussed in this Report & Recommendation – Plaintiff has not included in her brief specific citation to those portions of the record which she believes should have garnered more attention from the ALJ, the Court does not consider the merits of these overly-broad allegations. In addition, the Court's review of the ALJ's decision indicates that the ALJ's review of the record was comprehensive.

records, the ALJ correctly noted that a December 2001 MRI "revealed degenerative disc disease and disc bulging at L4-5 and L5-S1." (AR. 25, citing AR. 184-85 & 326.) The ALJ also correctly noted that October 2002 EMG results "were consistent with right L4-5 and L5-S1 radiculopathy." (AR. 25, citing AR. 488-91 & 326.) The ALJ correctly noted that "lumbar x-rays in October 2002 and November 2003 were essentially unremarkable as were cervical spine x-rays." (AR. 25, citing AR. 346 & 489.) The ALJ made these findings as part of a lengthy summary of Plaintiff's medical records. (AR. 25.) The ALJ considered Plaintiff's initial medical records, subsequent treatment records, an ultrasound, an independent medical examination, neurological exams, functional evaluations and multiple agency examinations. After considering all of these medical records, the ALJ concluded that "overall, the clinical and laboratory findings appear to be disproportionate to the severity of pain and other symptoms alleged." (*Id.*) The ALJ did not reject Plaintiff's MRI and EMG results in favor of Plaintiff's x-ray results. Instead, the ALJ correctly summarized Plaintiff's medical history, fairly represented the results of the MRI, EMG and the x-rays, and, after viewing all of Plaintiff's medical records as a whole, concluded that the alleged intensity of Plaintiff's symptoms were inconsistent with the medical record.[10]

Second, Plaintiff claims that the ALJ overly focused on reports of improvement. This argument again misconstrues the ALJ's findings. As discussed in the preceding paragraph, the ALJ provided a comprehensive summary of Plaintiff's medical history. As part of this summary, the ALJ correctly noted that on January 30, 2002, a neurological exam showed normal results with the exception of "hypoactive ankle jerks bilaterally." (AR. 25, citing AR. 327.) In addition, the ALJ correctly noted that on February 26, 2002, Dr. Gullo opined that Plaintiff "has responded favorably to conservative chiropractic management. I am unable to verify the claimant's subjective complaints with clinically significant objective findings at this time." (AR. 25, citing AR. 584.) The ALJ also correctly noted that on March 23, 2002, Dr.

---

[10] In addition, the Court notes that the EMG Report states that "results of this study should be correlated with other exams," suggesting that the EMG results should not be given more weight than MRI or x-ray results.

Nangia noted that Plaintiff had shown "moderate improvement for the symptoms for which she was originally consulted for [on January 14, 2002.]" (AR. 25, citing AR. 527.) Thus, the ALJ made three findings regarding Plaintiff's improvement, each of which was supported by substantial evidence. The ALJ, however, did not hinge his credibility finding on the reports of improvements in Plaintiff's medical record, nor did the ALJ give undue weight to those reports. In summarizing Plaintiff's medical history, the ALJ noted the reports of improvement as well as numerous other facts belying the alleged intensity of Plaintiff's symptoms: Dr. Gullo's February 2002 opinion that Plaintiff was released to modified duty for a 4-week period after which time she could return to her regular duties; an exam showing no atrophy as well as normal tone, bulk and deep tendon reflexes; lack of follow-up testing; multiple examinations documenting only mild abnormalities; a lack of evidence showing muscle atrophy, parasthesias or the need for a cane and unremarkable lumbar and cervical spine x-rays. The reports of improvement were properly considered as part of Plaintiff's complete medical history, which the ALJ fairly considered.

Third, Plaintiff alleges that the ALJ mis-characterized the results of an MRI. The Court disagrees. In summarizing Plaintiff's medical records, the ALJ correctly noted that a December 2001 MRI "revealed degenerative disc disease and disc bulging at L4-5 and L5-S1." (AR. 25, citing AR. 184-85 & 326.) This finding is taken verbatim from the medical records of Dr. Stephen Kulick, who reviewed Plaintiff's MRI and EMG and observed that the MRI "revealed bulging discs at L4-5 and L5-S1. Degenerative disc disease was also noted." (AR. 326.) The Court notes that Dr. Nangia made the same findings with respect to Plaintiff's MRI. (AR. 532.) Accordingly, the ALJ's summary of the MRI results is supported by substantial evidence.

Fourth, Plaintiff contends that the ALJ erroneously concluded that no follow-up test results or treatment records were submitted after a December 2002 functional evaluation. (AR. 25.) The Court finds that the ALJ's finding was supported by substantial evidence. On December 10, 2002, Dr. Mario Introna requested functional evaluation testing of Plaintiff by Tri-State Diagnostics, Inc., an independent computerized functional evaluation company. The test results are included in the administrative record. (AR. 559-72.) They consist of various

graphs summarizing Plaintiff's ability to perform tasks such as a floor lift, torso lift, leg lift, foot lift and arm lift, apparently measured in force per pound. The test results do not include any medical opinion regarding Plaintiff's condition. Instead, the test results state:

> Computerized Muscle Testing (CMT) and Range of Motion (ROM) are medically necessary to follow the functional progress and changes throughout the period of the patient's physical medicine and rehabilitation treatment. Findings from these exams determine the extent of functional loss and assist in the development and modification of the treatment plan. The patient will be retested in 4-6 weeks to measure progress. At the end of treatment, the patient will be retested to assess outcome and prepare a home exercise / maintenance program.

(AR. 564.) Thus, the functional evaluation is useful only when it can be compared to follow-up tests. The Court agrees with the ALJ that no follow-up functional evaluation tests are included in the medical record.[11] The ALJ was therefore justified in noting the limited usefulness of the December 2002 test.

Fifth, Plaintiff alleges that the ALJ improperly considered Plaintiff's part-time employment at Safeway in assessing her credibility. In his decision, the ALJ stated:

> In reviewing the record as a whole, there are inconsistencies contained therein which cast doubt regarding the credibility of the claimant's testimony. Her testimony was that she received unemployment benefits after leaving work in December 2005. This is an indication that she was ready, willing and able to engage in work activity although perhaps not at the same exertional level as her previous job.

(AR 26.) Plaintiff notes that, in finding that the claimant has not engaged in substantial gainful activity at any time relevant to this decision, the ALJ stated "although claimant worked part-time after the alleged onset date, the earnings from this work activity were below the substantial gainful level." (*Id*.) Based on this finding, Plaintiff argues that if Plaintiff's part-time work did not constitute substantial gainful activity, the ALJ should not have considered it. However, the ALJ is permitted to consider evidence that a claimant received unemployment benefits during

---

[11] Plaintiff contends that the administrative record contains a list of medications prescribed by Dr. Introna to Plaintiff in April, 2004, and that this list constitutes "follow-up treatment records." The record identified by Plaintiff, however, appears to be an email from Jeannette Cherry dated April 30, 2004 listing her medications. (AR. 504.) There is no evidence before the Court to suggest that this document was prepared by Dr. Introna or that Dr. Introna was treating Plaintiff in 2004 as a follow-up to her functional evaluation.

the alleged period of disability when evaluating the claimant's credibility. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). Accordingly, it was not legal error for the ALJ to note that Plaintiff's receipt of unemployment benefits directly contradicted Plaintiff's testimony at the hearing that she was unable to work due to back pain. (AR. 644.)

Sixth, Plaintiff contends that the ALJ improperly based the finding of lack of credibility on the ground that Plaintiff received only sporadic and conservative treatment for her injury. (AR. 25.) Plaintiff argues that it is legal error for the ALJ to reject Plaintiff's allegations of pain on the ground that she received only sporadic treatment because Plaintiff could not afford medical insurance to pay for treatment. Although the Ninth Circuit has "proscribed the rejection of a claimant's complaints for lack of treatment when the record establishes that the claimant could not afford it," *see Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999), the record does not so establish in this case. Plaintiff did not present any testimony regarding her inability to pay for medical insurance, nor is there any such testimony in Plaintiff's application for benefits or other disability claim-related documentation. (AR 89-182.) Absent a showing of inability to pay for medical care, the ALJ is not only justified in considering but is required to consider "[t]reatment, other than medication, for relief of pain," pursuant to SSR 88-13. *See Bunnell*, 947 F.2d at 345-46. The ALJ's findings with respect to Plaintiff's history of sporadic and conservative treatments is supported by the record. The bulk of Plaintiff's medical treatment occurred prior to April 2002. After that time, Plaintiff continued to seek medical treatment for her diabetes and other physical conditions, but the only specialized treatment related to Plaintiff's back injury that occurred after April 2002 was the functional evaluation test (which, for the reasons stated in the previous paragraph, has limited value as a medical record). From the onset of her injury, Plaintiff's physicians recommended only conservative treatments, including pain medications, physical therapy, massage therapy, chiropractic care, acupuncture and modified physical activity. Several examining physicians commented that Plaintiff's condition was improved by conservative treatments.

Seventh, Plaintiff alleges that the ALJ mis-characterized her testimony about her ability to engage in limited daily activities. The ALJ reasoned that Plaintiff "took care of her two

minor children ... cooked meals and did laundry for her mother ... her activities included household chores, meal preparation, homework and internet research ... she was also able to go shopping and walk as needed and required no assistance in personal grooming." (AR. 26.) An ability to perform activities such as taking care of personal needs, preparing easy meals, doing light housework, and shopping for some groceries may be seen as inconsistent with the presence of a condition which would preclude all work activity. *See Curry v. Sullivan*, 925 F.2d 1127 (9th Cir. 1990). The ALJ's findings regarding Plaintiff's activities of daily living were supported by substantial evidence: in her disability application, Plaintiff described her typical day as "use facilities, make sure my children are awake and dress[ed] for school, prepare breakfast, eat with my children, send them off to school then bathe and dress myself. Take medications, morning doses, then complete light housekeeping that I can do alone, ie. sweeping, wash dishes, etc. Complete homework and study for exams. Cook dinner, eat, watch tv, take evening medicine, then go to bed." (AR. 123.) In response to the question "Do you take care of anyone else?" Plaintiff stated, "My children: cook meals, laundry, assist with homework when needed. My mother: cook meals, laundry, assist with medications." (*Id.*) The Court notes that Plaintiff's testimony at the hearing described more severe restrictions in Plaintiff's daily activities: Plaintiff testified that she needs assistance from her children with grocery shopping, laundry, meal preparation and housekeeping. (AR. 647-48.) She testified that she can sit to watch one movie but then needs to lie down, and that she can work at a computer for approximately one hour before she needs to lie down. (AR. 648-49.) However, "[i]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (citations omitted). Accordingly, the Court rejects Plaintiff's argument on this ground.

Finally, the ALJ rejected Plaintiff's reports of pain because "two common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse atrophy or muscle wasting. The Claimant's weight has remained relatively stable [and] there is also no record in any of the clinic notes regarding diffuse atrophy or muscle wasting." (AR. 26.) The ALJ committed legal error by speculating, without medical evidence, regarding the common side

effects of chronic pain. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294 (9th Cir. 1999) (finding that ALJ's conclusion was not supported by substantial evidence where ALJ engaged in speculation without citing to evidentiary support). However, because the ALJ's decision was supported by numerous other, valid findings, the Court declines to overturn the ALJ's denial of benefits on this ground. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("In light of the substantial evidence supporting the ALJ's conclusions on [claimant's] credibility, we do not think that the ALJ's assumption about [claimant] sitting while watching television affected the ALJ's conclusion or requires remand.").

**3. Affording greater weight to the opinions of Plaintiff's treating and examining physicians would not entitle Plaintiff to relief.**

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). Likewise, greater weight is accorded to the opinion of an examining physician than a non-examining physician. 20 C.F.R. § 416.927(d)(1); *see Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

The ALJ gave substantial weight to the opinions of non-examining physicians Dr. Stewart and Fabrizno. On February 24, 2004, Dr. Stewart reviewed Plaintiff's medical records on behalf of the Social Security Administration. (AR. 506-11.) Dr. Stewart opined that Plaintiff had RFC to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for a total of about 6 hours in an 8 hour workday and had no limitations in pushing or pulling. Dr. Fabrizno offered an identical opinion in a separate, undated RFC. (AR. 487.)

The medical records presented to the ALJ by Plaintiff include four[12] treating or examining physician opinions regarding Plaintiff's RFC and/or ability to work. On October 19, 2001, Dr. Tropiano opined that Plaintiff was "partially disabled pending further evaluation." (AR. 595.) On January 14, 2002, Dr. Nangia opined that Plaintiff was "partially, temporarily disabled [and should] refrain from strenuous physical activity." (AR. 588.) Dr. Nangia reaffirmed that opinion following a March 23, 2002 exam. (AR. 529.) On May 20, 2002, Dr. Lavonna Branker examined Plaintiff on behalf of the Social Security Administration and opined that Plaintiff was able to walk, sit, stand, lift, carry, handle objects, hear, speak and travel. She further opined that Plaintiff was able to perform sedentary activities with limitations on bending. (AR. 196.) On January 2, 2004, Dr. Lamberto Flores opined that Plaintiff was limited in her ability to perform a job involving prolonged walking/sitting/standing, climbing stairs or heavy lifting. (AR. 516.)

The only evident distinction between the opinions of the non-examining and examining physicians in this case is that the non-examining physicians believed Plaintiff to be capable of light activity, whereas the examining physicians suggested that Plaintiff might be limited to sedentary activity. Even if the examining physicians' opinions had been credited, however, Plaintiff would still not have been entitled to a finding of disability. Plaintiff is a "younger individual" as defined by the Social Security Medical Vocational Guidelines. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00(h)(1). Under Rule 201.27 of the Grids, a younger individual limited to sedentary exertion who is a high school graduate with no previous work experience, or who has previous work experience at the unskilled level, is not disabled.[13] Accordingly, the Court need not consider whether the ALJ provided specific and legitimate reasons for giving

---

[12] On December 3, 2002, Dr. Introna opined that Plaintiff suffered from a 40% whole person impairment level. Dr. Introna did not specifically comment on Plaintiff's ability to work, or her RFC.

[13] Under Rules 201.28 and 201.29, which describes younger individuals limited to sedentary exertion, who are high school graduates with previous work experience at the skilled or semi-skilled level and with or without skills that are readily transferable, Plaintiff also would be found not disabled.

substantial weight to the opinions of non-examining physicians; even if the Court made such a finding Plaintiff would not be entitled to relief. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (holding that an error was harmless if it was "inconsequential to the ultimate nondisability determination").

**4.  Plaintiff's 2007 medical records are not grounds for remand.**

Plaintiff presented additional evidence to the Appeals Council consisting of emergency room records from Northwest Medical Center from March of 2007, and an RFC provided by Dr. P. Leroy Goedecke in June, 2007. Plaintiff received treatment for chronic back pain at Northwest Medical Center on March 10, 2007, March 15, 2007 and March 28, 2007. (Doc. No. 17, pgs. 39-49.) Dr. Sadalla, the emergency room physician who treated Plaintiff on March 15, 2007, noted that Plaintiff showed extreme pain reflexes when he attempted to examine her back. Dr. Sadalla's impression was that Plaintiff suffered from acute lumbar spasm and strain, but he saw no evidence of acute cord compression. (Doc. No. 17, pg. 39.) An x-ray of Plaintiff's right hip showed no fractures, osteonecrosis or bone destructive lesions. (*Id.*, pg. 41.) On June 6, 2007, Dr. Goedecke treated Plaintiff for chronic back pain. He completed a Physical Residual Functional Capacity Assessment in which he opined that Plaintiff could stand for less than twenty minutes, sit for less than twenty minutes and walk for less than ten minutes. Dr. Goedecke also opined that Plaintiff could not stand for less than two hours during an 8-hour day with 3 breaks or walk for less than two hours during an 8-hour day with 3 formal breaks. He stated that Plaintiff could occasionally sit for twenty minutes in an 8-hour work day with three formal breaks.[14] According to Dr. Goedecke, Plaintiff could not lift and carry any weight. Dr. Goedecke also opined that Plaintiff would be unable to bend, climb or squat, and that she was moderately limited in her upper extremities. (Doc. No. 17, pg. 53.)

The Appeals Council declined to consider the new evidence on the ground that the evidence did not relate to the period on or before the date of the ALJ hearing decision, as

---

[14] Dr. Goedecke's notes with respect to Plaintiff's ability to sit for less than two hours during an 8-hour day with 3 formal breaks are difficult to decipher.

required by 20 C.F.R. §§ 404.953(a) and 416.1453(a). Plaintiff argues before this Court that her case should be remanded to the ALJ for a re-consideration of her disability claim in light of the 2007 medical records.

To justify a remand, Plaintiff must show that the 2007 medical records are material to determining her disability, and that she had good cause for having failed to produce that evidence earlier. *See Mayes v. Massanari,* 276 F.3d 453, 462 (9th Cir. 2001) (citing 42 U.S.C. § 405(g)). To be material under section 405(g), the new evidence must bear "directly and substantially on the matter in dispute." *Id.* (citing *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). In addition, Plaintiff must demonstrate that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *See Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984). To demonstrate good cause, Plaintiff must demonstrate that the new evidence was unavailable earlier. *See Mayes*, 276 F.3d at 463 (citing *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)).

Of the 2007 medical records produced by Plaintiff, the RFC provided by Dr. Goedecke is arguably material to her claim. If Dr. Goedecke's RFC were afforded more weight than the other medical opinions in Plaintiff's record, it would support a finding that Plaintiff is not capable of performing sedentary work. *See* 20 C.F.R. § 404.1567(a) (defining sedentary work as "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") However, Plaintiff has not demonstrated good cause for her failure to obtain an RFC from Dr. Goedecke before her administrative hearing. *See Mayes*, 276 F.3d at 463 ("[a] claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied."). Accordingly, the Magistrate Judge does not

recommend remand of Plaintiff's claim based on the 2007 medical records produced by Plaintiff.[15]

## **RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order DENYING the relief requested by Plaintiff in her opening brief. (Doc. No. 19.)

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to *de novo* review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 08-478-DCB.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 26th day of June, 2009.

_____
Jennifer C. Guerin
United States Magistrate Judge

---

[15] Instead, as the Appeals Council advised Plaintiff, the appropriate course of action for Plaintiff to pursue if she believes her 2007 medical records support a finding of disability is to file a new application for benefits. *See* 20 C.F.R. § 416.330.